## STATE OF OHIO EX REL. COAL CO. v. BOARD OF PUBLIC AFFAIRS.

**1. STATEMENT OF FACTS.**

The board of public affairs of Cincinnati advertised for proposals to furnish for the water works "screened lump coal for steaming purposes, according to specifications on file in their office," and "reserved the right of rejecting any or all bids." The specifications on file in the office provided that the bidders will name the kind of coal, and, if possible, give comparative value of the coal to the second (2d) Pool Youghiogheny coal, and "that the engineer of the water works shall cause rigid examination to be made of the coal as it is received, and shall have power to refuse any coal which does not conform to the stipulations of the contract. Relator proposed to furnish "Winifrede coal" at a certain price per ton, but did not give the "comparative value of that coal to second Pool Youghiogheny coal." The bids were referred to the engineer of the water works, who reported certain crucial tests of that and other coals by an expert, tending to show that the other coals proposed to be furnished, were when quality was one of the tests, really the cheaper, and recommended a contract to be made with such other bidders, which was done; Held:

**2. BIDS NOT IN CONFORMITY TO ADVERTISEMENT.**

That the proposals of relator did not conform to the advertisement since he did not give the comparative value called for, nor show that it was not possible.

**3. ENGINEER THE FINAL ARBITER OF QUALITIES.**

That as the specifications made the engineer of the water works the final arbiter as to

Vol. IV.                              CIRCUIT COURTS.                              429

76                      State ex rel. Coal Co. v. Board of Public Affairs.

the quality of the coal to be furnished, it was proper for the board to refer proposals to him, and act on his report.

**4. ACTION OF BOARD NOT TO BE INTERFERED WITH.**

Such action of the board will not be interfered with by mandamus, in the absence of fraud, or gross carelessness amounting to fraud:

**5. QUALITY MAY BE COMPARED WITH PRICE.**

In determining which bid was the lowest, the board was authorized to take into consideration the quality of the coal as one of the factors, and not merely the lowest amount of money per ton.

MANDAMUS.

Cox, J.

The relator seeks to compel the Board of Public Works of Cincinnati to award to it certain contracts to supply the city with coal for the Water Works. It avers that it is a corporation under the laws of West Virginia doing business in Cincinnati. That the Board of Public Affairs of Cincinnati advertised for sealed proposals to be delivered at their office on or about noon of Tuesday, April 30, 1889 for furnishing and delivering them 33,500 tons of the best quality of screened lump coal for steam purposes, of which 30,000 tons were to be delivered at Front street pumping house, 3,000 tons at Hunt street, and 500 tons at Price Hill pumping house, according to specifications which are on file in the office of said Board of Public Affairs. Relator says that at the time named it submitted sealed proposals in conformity with said advertisement of said board to furnish said 30,000 tons for Front street station for $66,900; 3,000 tons for Hunt street for $7,980, and 500 tons for Price Hill for $1,180, and all of the coal so advertised for, for the sum of $76,060.00, which was the lowest bid for all of said coal, and that it also gave the names of two disinterested sureties for the performance of the contract on its part. Relator says that it has for several years furnished coal for said water works to the satisfaction of defendants but that defendants awarded this contract to W. H. Brown & Sons, and to the Campbell Creek Coal Company. Relator claims that it is entitled to the contract, and asks that defendant be compelled to so award it.

The defendant answers that it advertised for sealed proposals for furnishing and delivering 32,600 tons of the best quality of screened lump coal for steaming purposes, "according to specifications which were on file in the office of the Board of Public Affairs," and to be delivered at the places named in the petition, and that in said advertisement said board reserved the right of rejecting any or all bids.

That a careful examination and comparison of all the bids of different bidders for said contract was made by Arthur G. Moore superintendent of the city water works, for the purpose of determining which of said bids was the lowest and best bid for the city of Cincinnati, and that in so doing his calculations were based on certain crucial tests of the calorific qualities of the different brands of coal for which bids were received, made by John W. Hill, former superintendent of the water works. That said Moore reported to the defendant that the bids submitted by plaintiff company were not the lowest and best bids, and recommended the award to be made to the other lower and better bidders. That in determining which was the lowest and best bid, the superintendent took as a basis of calculation the tests made by John W. Hill, and simply acted upon what had been the custom of his predecessors, and that the plaintiff has acknowledged that such was the custom and that the tests made by Hill were generally approved, accepted and known to be the guide for the superintendent of the city water works. They say that the award of the contract was made May 2, 1889, to the lowest and best bidder counting the interest of the city of Cincinnati the real party.

Relator denies that there has been any custom to award bids on the basis of tests made by John W. Hill, and that the advertisement made no mention of said

tests and that said tests were overthrown by subsequent tests made by the s....c chemist, and that the superintendent had frequently admitted that relator's coal was equal if not superior to screen pool Youghiogheny; that there was no intention that its coal was to be treated otherwise than on a basis of equality with screen pool Youghiogheny, and that its bid was to be acted upon the assumption of the comparative value of its coal with screen pool Youghiogheny.

The specifications on file in the office of the Board of Public Affairs, were, so far as necessary to be referred to in this case substantially as follows: "that the lump or nut coal be of good quality for steaming purposes. Bidders will name the kind of coal and, if possible, give comparative value of the coal to the second pool Youghiogheny coal. The engineer of the water works shall cause rigid examination to be made of the coal as it is received, and shall have the power to refuse any coal which does not conform to stipulations of contract, etc."

The bid of relator was as follows: "We hereby agree to furnish and deliver to the various stations of the City Water Works * * * 33,500 tons of well screened Winifrede Lump Coal, according to the specifications herewith attached, at the following prices:

"30,000 tons to Front street station at $2.23 per ton,
3,000 tons to Hunt street station at $2.66 per ton,
500 tons to Eighth street station at $2.36 per ton."

It is evident from the specifications, that the board had in view as a standard coal for steam purposes the "screened 2d pool Youghiogheny coal," as bidders were required to name the kind of coal, and if possible, give comparative value of their coal to the second pool Youghiogheny coal. The relator in its proposal, simply names the kind of coal it proposes to furnish, but does not give any comparison of its value as to the Youghiogheny coal, nor does it say that it was impossible to do so.

This proposal not being in accordance with the advertisement, it might be said that the board could reject it entirely. But the board saw proper to refer it, as well as all other bids, to the superintendent of the water works, who was, by the terms of the specifications, made the final arbitrator as to the quality of coal furnished. His report is full as to the comparative merits of the coal of relator and that of the other parties to whom the contract was awarded. He refers to the test made by Hill, as reported in the annual report for 1885, which places the relative valuation of the several brands of coal as follows:

Brown 2d Pool Yough. 1000,
Winifrede, 969,
Campbell Creek, 957,

Being 3.19 per cent. in favor of Brown over Winifrede, and 1.254 per cent. in favor of Winifrede over Campbell Creek.

The two lowest propositions to deliver to Front street, were Brown 2d Pool at $2.27 and Winifrede at $2.28 per ton; 179 per cent. in favor of Brown over Winifrede, and deducting this excess for that of its valuation to it, 3.199—179, 2.409 per cent. in favor of Brown.

The comparison he makes between Campbell Creek and Winifrede at Hunt street 13.396 per cent. in favor of Campbell Creek; for Eighth street, 3626 per cent. in favor of Campbell Creek. These tests, he says, vary from his experience in former years, but, as the records were lost, he has no means of referring to them, and the closeness of the bids will not justify the expenditure necessary to make the tests; he recommends that the contract be awarded to W. H. Brown & Sons, for supplying Front street, and to the Campbell Creek Co., for Hunt and Eighth streets stations.

The question to be determined by the board in awarding the contract for coal was not simply as to who should furnish any kind of coal at the lowest price per

ton, but who should furnish the best quality of lump or nut coal for steaming purposes at the lowest price; and the board were necessarily invested with the duty of examining into the quality of the coal to be contracted for, and the quality of the coal and the price were both to. be taken into consideration in determining which was the lowest. They reserved to themselves the privilege also of rejecting any or all bids. For the purpose of intelligently determining this question the matter was referred to the superintendent of the water works, who was the final judge of the quality of coal under. the specifications, and they acted on his report. That report contained a reference to former very elaborate and crucial tests made of all their coals by Mr. Hill, and that report is offered in evidence. Upon these facts the board acted. No complaint is made that they acted in bad faith, or without consideration. Testimony is offered by relator tending to show the good quality of the coal, as being the equal, or nearly so, of Second Pool Youghiogheny. But it is not so preponderating as to convince us that the award of the board should have been to them, nor are we the persons to decide this in the absence of allegations of fraud or bad faith on the part of the board.

The petition of relator will be dismissed.

Ramsey, Maxwell & Ramsey, attorneys for relator.

Horstman, Hadden & Foraker city solicitors, for defendant.